## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JONATHAN BAKER,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-03045-N** |
| | § | |
| **SCHNEIDER NATIONAL CARRIERS,** | § | |
| **INC.** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT SCHNEIDER NATIONAL CARRIERS, INC.'S BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY JUDGMENT GROUNDS ............................................................ 2

III.    FACTUAL BACKGROUND .............................................................................. 2

        A.      Plaintiff's Employment with Schneider. ............................................... 2

        B.      Plaintiff's Job Duties as a Yard Jockey. ............................................... 3

        C.      Plaintiff Suffers an Injury to His Right Eye. ........................................ 4

        D.      Schneider Offers Plaintiff a Temporary Restricted Duty Position, which
                He Accepts. ........................................................................................... 4

        E.      Plaintiff Claims Schneider Allowed Him to Take Approved Medical
                Leave from May 2015 through mid-October 2015. ............................... 5

        F.      Plaintiff Claims Schneider Terminated His Employment in mid-October
                2015 After Plaintiff Informed Schneider that He Still Could Not Safely
                Operate a Commercial Vehicle. ............................................................ 6

IV.     ARGUMENT ..................................................................................................... 7

        A.      Summary Judgment Standard. ............................................................... 7

        B.      Plaintiff's Disability Discrimination Claim Fails as a Matter of Law. ... 7

                1.      Plaintiff cannot state a prima facie case of disability discrimination
                        under the ADA. ........................................................................... 8

                        a.      There is no dispute that Plaintiff was not "qualified" to
                                perform the essential functions of his position. ............... 8

                        b.      Plaintiff cannot identify a reasonable accommodation that
                                would have enabled him to perform his essential job
                                functions. ................................................................... 10

                        c.      Plaintiff cannot establish that Schneider terminated his
                                employment "on account of" his disability. ................... 11

                2.      Plaintiff cannot prove Schneider's stated reason for his termination
                        was pretextual. ......................................................................... 11

        C.      Plaintiff's Failure-to-Accommodate Claim under the ADA Fails as a
                Matter of Law. .................................................................................... 13

                1.      Plaintiff cannot establish that he was a "qualified individual" with
                        a disability. .............................................................................. 14

                2.      There is no dispute that Schneider provided Plaintiff with several
                        reasonable accommodations. ..................................................... 14

V.      CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amsel v. Texas Water Dev. Bd.*,
    464 Fed. Appx. 395 (5th Cir. 2012).........................................................................15

*Austgen v. Allied Barton Sec. Services, L.L.C.*,
    815 Fed. Appx. 772 (5th Cir. 2020).........................................................................14

*Burch v. City of Nacogdoches*,
    174 F.3d 615 (5th Cir. 1999) ..................................................................................10

*Cannon v. Jacobs Field Servs. N. Am., Inc.*,
    813 F.3d 586 (5th Cir. 2016) .....................................................................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................7

*Clark v. Charter Commc'ns, L.L.C.*,
    775 F. App'x. 764 (5th Cir. 2019).......................................................................13, 14

*Credeur v. Louisiana Through Office of Attorney Gen.*,
    860 F.3d 785 (5th Cir. 2017) .................................................................................8, 9

*E.E.O.C. v. LHC Grp., Inc.*,
    773 F.3d 688 (5th Cir. 2014) .................................................................................7, 8

*Mason v. Durham Transp. Inc.*,
    265 F.3d 1059 (5th Cir. 2001) .............................................................................12, 13

*Melendez v. County of Westchester*,
    2019 WL 251731 (S.D.N.Y. Jan. 16, 2019) .............................................................13

*Moore v. Centralized Mgmt. Services, L.L.C.*,
    843 Fed. Appx. 575 (5th Cir. 2021).........................................................................11

*Nall v. BNSF Ry. Co.*,
    917 F.3d 335 (5th Cir. 2019) .............................................................................7, 8, 9

*Price v. Marathon Cheese Corp.*,
    119 F.3d 330 (5th Cir. 1997) ..................................................................................12

*Reed v. Jefferson Par. Sch. Bd.*,
    2014 WL 1978990 (E.D. La. Apr. 24, 2014)............................................................15

*Schmidt v. Delta Airlines, Inc.*,
     2001 WL 649676 (N.D. Tex. June 8, 2001) ......................................................10

*Steele v. FFE Transp. Services, Inc.*,
     2010 WL 2465231 (E.D. Tex. June 16, 2010) ..............................................10, 14

*TIG Ins. Co. v. Sedgwick James of Washington*,
     276 F.3d 754 (5th Cir. 2002) ...............................................................................7

*Toronka v. Cont'l Airlines, Inc*.,
     411 F. App'x 719 (5th Cir. 2011) .......................................................................10

*Wade v. Brennan*,
     647 Fed. Appx. 412 (5th Cir. 2016) ..............................................................10, 15

*Weber v. BNSF Ry. Co.*,
     2019 WL 9100375 (N.D. Tex. Dec. 6, 2019), *aff'd,* 989 F.3d 320 (5th Cir.
     2021) ...................................................................................................................13

## STATUTES

42 U.S.C. § 12113(b) .....................................................................................................9

## OTHER AUTHORITIES

29 C.F.R. § 1630.2(o), Appendix .................................................................................15

29 C.F.R. § 1630.2(n)(l) .................................................................................................8

29 C.F.R. § pt. 1630, Appendix at 397 ..........................................................................8

## I.    <u>INTRODUCTION</u>

In early January 2015, Plaintiff Jonathan Baker ("Plaintiff") suffered an injury to his right eye while performing his job duties as a Yard Jockey Driver.  Since that injury, Plaintiff claims he has suffered from severe vision loss and photophobia, which progressively worsened over time and has prevented him from being able to safely operate a commercial vehicle in any capacity. His employer, Defendant Schneider National Carriers, Inc. ("Schneider"), attempted to engage Plaintiff in the interactive process and offered him a temporary restricted duty position consistent with the temporary work restrictions imposed by Plaintiff's physicians.  Plaintiff, however, claimed he could not even perform basic light-duty tasks such as "keeping logs" and maintaining paperwork due to his severe vision loss and photophobia, thus prompting Schneider to approve him to take medical leave for approximately six months.  According to Plaintiff, he informed Schneider in mid-October 2015 that he was still unable to perform his essential job functions and could not even provide an anticipated date of return. Due to Plaintiff's inability to perform the essential functions of his job, Schneider subsequently terminated his employment.

Plaintiff has now filed this action alleging that Schneider failed to provide him with a reasonable accommodation and terminated his employment because of his disability, in violation of the Americans with Disabilities Act ("ADA").  Plaintiff's ADA claims are devoid of any factual or legal merit.  In particular, Plaintiff's admission that he has been completely unable to operate a commercial vehicle (or even a personal, non-commercial vehicle) in any capacity since his January 2015 eye injury is fatal to his ADA claims because it establishes beyond dispute that Plaintiff was not "qualified" for his position as Yard Jockey Driver or Dedicated Driver for Schneider. Moreover, Plaintiff cannot identify any reasonable accommodation that could have enabled him to safely operate a commercial vehicle or perform the other essential functions of his position.  The undisputed facts establish that Schneider did accommodate Plaintiff's disability for more than nine

months through a combination of light-duty work and approved medical leave, before ultimately

terminating Plaintiff's employment since he was still unable to perform his essential job functions.

For these reasons, and the reasons set forth below, the Court should grant Defendant's

Motion for Summary Judgment and dismiss all of Plaintiff's claims with prejudice.

## II.   SUMMARY JUDGMENT GROUNDS

The Court should grant summary judgment on Plaintiff's ADA claims because:

(1)    Plaintiff cannot establish a *prima facie* case of disability discrimination under the ADA because it is undisputed that he was not qualified to perform his essential job functions and because there is no evidence that Schneider terminated his employment "because of" his alleged disability.

(2)    Plaintiff cannot establish that Schneider's legitimate, non-discriminatory reason for terminating his employment was a pretext for unlawful discrimination.

(3)    Plaintiff cannot establish a *prima facie* case of failure-to-accommodate under the ADA because he was not qualified to perform his essential job functions, with or without reasonable accommodation, and because it is undisputed that Schneider engaged in the ADA interactive process and provided Plaintiff with several accommodations.

## III.   FACTUAL BACKGROUND

### A.   Plaintiff's Employment with Schneider.

Schneider hired Plaintiff in or around June 2014 for the position of Dedicated Driver on

the Sprouts Farmers Market ("Sprouts") dedicated account based out of Sprout's distribution

center in Wilmer, Texas.  (App. 11–13, Exhibit 1, Deposition of Plaintiff Jonathan Baker ("Plf.

Dep.") at 23:23–25, 27:22–28:13).   Schneider is a transportation and logistics company that

operates as a common and contract motor carrier throughout the United States and Canada.  (App.

69, Exhibit 2, Declaration of Gerald English ("English Decl."), ¶ 2).  Schneider has implemented

an Equal Opportunity Employer Policy and Disability Accommodation Policy, which all

employees can access on Schneider's intranet.  (App. 69, English Decl., ¶ 3).  Consistent with the

EEO Policy, Schneider makes all employment decisions without regard to, and prohibits all

2

discrimination based upon, "physical or mental disability… or any other classification protected by applicable federal, state, or local law." (App. 72–73, English Decl., Exh. 2-A). Schneider also provides "reasonable accommodation to a qualified individual with a disability . . . who has made the Company aware of his or her disability (or the disability is apparent), provided that such accommodation does not constitute an undue hardship." (App. 74–75, English Decl., Exh. 2-B). Schneider enforces its EOE and Disability Accommodation Policy and takes steps to ensure that all employees are aware of and understand these policies. (App. 69, English Decl., ¶ 3).

      **B.    Plaintiff's Job Duties as a Yard Jockey.**

After hiring Plaintiff for the Dedicated Driver position on the Sprouts dedicated account, Schneider assigned Plaintiff to work as the Yard Jockey Driver since he was one of the most "knowledgeable" drivers on the account. (App. 14–16, 20–21, Plf. Dep. at 39:16–23, 41:18–42:6, 49:12–50:4). As the only Yard Jockey Driver on the Sprouts account, Plaintiff's job duties differed from that of other drivers. (App. 17–18, Plf. Dep. at 46:14–47:20). Dedicated Drivers on the Sprouts account were primarily responsible for operating commercial trucks to transport assigned loads of freight from one location to another. (App. 70, English Decl., ¶ 5). The Yard Jockey Driver, by contrast, mainly worked at the Sprouts distribution center and was primarily responsible for coordinating the arrival and departure of other Dedicated Drivers transporting freight in and out of the distribution center and ensuring that such operations run smoothly. (App. 17–18, 20–21, Plf. Dep. at 46:14–47:20, 49:12–50:4).

One essential job function of the Yard Jockey Driver position is operating a terminal tractor (also known as a "yard jockey" or "yard mule") to move semi-trailers in and out of dock doors and parking spaces at the Sprouts distribution center. (App. 18–19, 24, Plf. Dep. at 47:21–48:23, 57:7–17; App. 70, 76–82, English Decl, ¶ 7, Exh. 2-C). In order to perform this essential job function, the Yard Jockey Driver must be able to safely operate a commercial motor vehicle, which requires

the Yard Jockey Driver to be able to see with sufficient "acuity," "depth perception," and "field of vision." (App. 70, 76–82, English Decl., ¶ 7, Exh. 2-C; App. 22–24, Plf. Dep. at 53:19–54:16, 57:7–17). Schneider also requires the Yard Jockey Driver to maintain a Class A commercial driver's license. (App. 70, 76–82, English Decl., ¶ 7, Exh. 2-C).

      **C.    Plaintiff Suffers an Injury to His Right Eye.**

On January 4, 2015, Plaintiff injured his right eye at work while opening a truck door. (App. 25, Plf. Dep. at 60:4–24). According to Plaintiff, a "wire" on the truck door "slashed" his right eye and damaged his cornea. (*Id.*) About a week later, Plaintiff reported his injury to Schneider and sought medical care for the first time on or around January 13, 2015. (App. 25–26, Plf. Dep. at 60:8–12, 61:3–5). Plaintiff was diagnosed with a "corneal abrasion" to his right eye and received a referral to visit an ophthalmologist for further medical care. (App. 27–28, Plf. Dep. at 62:4–63:17; App. 87–88, Folkman Decl., Exh. 3-A).

On or around January 26, 2015, Schneider received a "Workers' Compensation Work Status Report" ("Work Status Report") from Plaintiff's ophthalmologist, Dr. Robert Eisenberg ("Dr. Eisenberg"), releasing Plaintiff to return to work without restrictions, effective January 28, 2015. (App. 85, 87–88, Exhibit 3, Declaration of Lori Folkman ("Folkman Decl."), ¶ 5, Exh. 3-A). The following day, Schneider received another Work Status Report, this time from a different healthcare provider, Dr. Matthew Scott ("Dr. Scott"), releasing Plaintiff to work subject to the following work restrictions: "No driving company vehicle. No safety sensitive position." (App. 85, 89–91, Folkman Decl., ¶ 6, Exh. 3-B).

      **D.    Schneider Offers Plaintiff a Temporary Restricted Duty Position, which He Accepts.**

Despite receiving conflicting Work Status Reports, Schneider deferred to the work restrictions imposed by Dr. Scott and offered Plaintiff a temporary restricted duty position with no

driving or driving-related job duties.  (App. 29–32, Plf. Dep. at 68:9–71:14; App. 85, 92–94, Folkman Decl., ¶ 7, Exh. 3-C).  Plaintiff accepted Schneider's offer, signed the Restricted Duty Work Agreement, and commenced his restricted duty assignment.  (*Id.*)

In Plaintiff's restricted duty role, Schneider asked Plaintiff to "keep logs" and maintain other paperwork as well as go "outside in[to] the light," but according to Plaintiff, he was unable to perform these duties due to his "loss of vision" and photophobia.  (App. 33–35, Plf. Dep. at 72:4–74:10).  In fact, Plaintiff claims all he was able to do in his restricted duty role was "sit in the dark."  (App. 10, Plf. Dep. at 19:7–22).  Plaintiff's purported inability to perform basic tasks such as maintaining paperwork and logs was not supported by Plaintiff's medical certifications or Work Status Reports, which only restricted Plaintiff from "driving company vehicles" and working in a "safety sensitive position."  (App. 85, 89–91, Folkman Decl., ¶ 6, Exh. 3-B).

### E.    Plaintiff Claims Schneider Allowed Him to Take Approved Medical Leave from May 2015 through mid-October 2015.

According to Plaintiff, Schneider kept Plaintiff in this restricted duty role for some time, but since Plaintiff was unable to perform tasks within his work restrictions due to his vision loss and photophobia, Schneider eventually placed him on approved medical leave and allowed him to recover at home.  (App. 36–42, Plf. Dep. at 85:16–88:4, 92:8–93:11, 94:11–18).  Plaintiff claims he stayed at home from May 2015 through mid-October 2015 on approved medical leave and received workers' compensation benefits throughout this time period.  (*Id.*)

Even though Schneider purportedly allowed Plaintiff to take medical leave from May 2015 through mid-October 2015, Schneider did not receive any medical certifications or Work Status Reports during this time period imposing any work restrictions on Plaintiff.  (App. 85, Folkman Decl., ¶ 8; App. 70, English Decl, ¶ 8).  The only medical certifications related to Plaintiff that

5

Schneider received during this time period indicated that Plaintiff had been released to work full-duty without any restrictions.  (App. 85, Folkman Decl., ¶ 8).

### F.   Plaintiff Claims Schneider Terminated His Employment in mid-October 2015 After Plaintiff Informed Schneider that He Still Could Not Safely Operate a Commercial Vehicle.

On or about October 1, 2015 and October 15, 2015, Schneider received two Work Status Reports from Plaintiff's retina specialist, Dr. Philip Matthews ("Dr. Matthews"), clearing Plaintiff to return to work without restrictions.  (App. 86, 95–102, Folkman Decl., ¶¶ 9–10, Exhs. 3-D, 3-E).  According to Plaintiff, he received a phone call from his managers, Sarah Feeney and Jim Crawford, in mid-October 2015.  (App. 47, Plf. Dep. at 115:1–20).  During the call, Plaintiff claims his managers informed him that Schneider had received a medical certification clearing him to return to work without restrictions.  (App. 48, Plf. Dep. at 116:1–18).  Plaintiff also claims his managers asked him to return to work as a Dedicated Driver, instead of the Yard Jockey Driver, on the Sprouts account.  (App. 50–51, Plf. Dep. at 127:24–128:24).

According to Plaintiff, he told Ms. Feeney and Mr. Crawford that he was not able to return to work as a Dedicated Driver because he still could not safely operate a commercial vehicle due to his vision loss which had only gotten worse over time.  (App. 48–49, 51–52, Plf. Dep. at 116:1–117:1, 128:25–129:5).  Plaintiff also admits he could not perform the job duties of his former position as Yard Jockey Driver either.  (App. 43–44, Plf. Dep. at 102:11–103:6).  Since Plaintiff admitted that he was not qualified to perform the essential job functions of either the Dedicated Driver or Yard Jockey Driver positions, Schneider subsequently terminated Plaintiff's employment.  (App. 43–49, 51–52, 63–65, Plf. Dep. at 102:11–103:6, 108:2–6, 114:21–115:9, 116:1–117:1, 128:25–129:5, 154:12–156:6).  According to Plaintiff, Schneider informed him that he was eligible for rehire and should reapply for an open position once he is able to work.  (App. 52–53, Plf. Dep. at 129:15–130:2).

Plaintiff, however, never reapplied for any position with Schneider due to his loss of vision. (App. 53–54, 66, Plf. Dep. at 130:3–131:10, 165:11–13).  In fact, Plaintiff's vision has only gotten progressively worse since his termination from Schneider, and he has not been able to drive any type of vehicle since his January 2015 eye injury.  (App. 5–9, 66, Plf. Dep. at 14:12–18:9, 165:5–10; App. 112, Exhibit 4, Plaintiff's Responses to Schneider's First Set of Requests for Admission ("RFA Answers"), ¶ 50).

## IV.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment must be entered if the nonmoving party fails to provide sufficient evidence on an essential element to his case on which he will bear the burden at trial.  *Id*.  A party cannot defeat summary judgment by relying on conclusory allegations, speculation, unsubstantiated assertions, conjecture, or subjective beliefs.  *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002).

### B.    Plaintiff's Disability Discrimination Claim Fails as a Matter of Law.

Plaintiff's disability discrimination claim under the ADA should be analyzed pursuant to the familiar McDonnell-Douglas burden-shifting framework. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  *Id.*  If Plaintiff satisfies this requirement, the burden then shifts to Schneider to articulate a legitimate, nondiscriminatory reason for taking an adverse employment action against Plaintiff.  *Id.*  Finally, it is Plaintiff who has the ultimate burden of establishing that the stated reason was merely a "pretext" for unlawful discrimination.  *Id.*

### 1. Plaintiff cannot state a *prima facie* case of disability discrimination under the ADA.

To establish a *prima facie* case for disability discrimination under the ADA, Plaintiff must demonstrate that: (1) he has a disability; (2) he is qualified for the job; and (3) Schneider terminated his employment "on account of" his disability.  *See LHC Grp., Inc.*, 773 F.3d at 695.  Here, Plaintiff cannot satisfy the second or third *prima facie* elements because, by his own admission, Plaintiff could not safely operate a motor vehicle due to his vision loss.  As such, there is no dispute that Plaintiff was not qualified for either the Dedicated Driver position or the Yard Jockey Driver position, and that Schneider's decision to terminate his employment was not "on account of" his disability.  *LHC Grp., Inc.*, 773 F.3d at 695.

### a. There is no dispute that Plaintiff was not "qualified" to perform the essential functions of his position.

To be "qualified" under the ADA, Plaintiff must establish that he could either (1) "perform the essential functions of the job in spite of his disability," or (2) identify "a reasonable accommodation of his disability [that] would have enabled him to perform the essential functions of his job."  *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016).  "'Essential functions' are 'fundamental', as opposed to 'marginal', job duties, such that a job is 'fundamentally alter[ed]' if an essential function is removed."  *Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting 29 C.F.R. § 1630.2(n)(l); 29 C.F.R. § Pt. 1630, app. at 397) (internal citation omitted).  When analyzing whether a job function is "essential" under the ADA, courts "must give greatest weight to the employer's judgment."  *Id.*  Importantly, "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards . . . nor to require employers to lower such standards."  *Id.* (quoting 29 C.F.R. § Pt. 1630, app. at 398).

Here, Plaintiff cannot dispute that an essential job function of both the Dedicated Driver and Yard Jockey Driver positions is the ability to see to safely operate a commercial vehicle. Dedicated Drivers must be able to safely drive trucks on the road in order to transport freight to different locations, while the Yard Jockey Driver must be able to safely operate a terminal tractor (or "yard jockey") in order to move semi-trailers in and out of dock doors and parking spaces at the Sprouts distribution center. (App. 17–18, 20–21, Plf. Dep. at 46:14–47:20, 49:12–50:4; App. 70, 76–82, English Decl., ¶¶ 5, 7, Exh. 2-C). Operating commercial vehicles in a safe manner is a "fundamental" job duty for both the Dedicated *Driver* and Yard Jockey *Driver* positions, and eliminating such duty would "fundamentally alter" both positions. *Credeur*, 860 F.3d at 792.

Plaintiff also admits that he informed Schneider that he could not safely operate a commercial vehicle, or work as either a Dedicated Driver or Yard Jockey Driver, due to his vision loss. (App. 43–44, 48–49, 51–52, Plf. Dep. at 102:11–103:6, 116:1–117:1, 128:25–129:5). Plaintiff further admits that having good vision (including visual acuity, depth perception, and field of vision) is a pre-requisite to safely operating any commercial vehicle. (App. 22–23, Plf. Dep. at 53:19–54:16). Since Plaintiff claims his vision *never* recovered after his January 2015 injury and only got progressively worse over time, it is undisputed that Plaintiff could not safely work as a Dedicated Driver or Yard Jockey Driver due to his vision impairment at the time Schneider terminated his employment.[1] (App. 43–49, 51–52, 63–65, Plf. Dep. at 102:11–103:6, 108:2–6, 114:21–115:9, 116:1–117:1, 128:25–129:5, 154:12–156:6; App. 112, RFA Answers, ¶

---

[1] In fact, Plaintiff claims he has not been able to drive *any* type of vehicle ever since he suffered his eye injury in January 2015. (App. 66, Plf. Dep. at 165:5–10). Had Plaintiff attempted to come back to work as a Yard Jockey Driver or Dedicated Driver, he would have posed a "direct threat" to the safety of himself, his coworkers, and the general public. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019) ("An employer is entitled to a direct threat defense if an employee poses a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.") (internal quotation marks omitted); *see also* 42 U.S.C. § 12113(b).

50).

    b. <u>Plaintiff cannot identify a reasonable accommodation that would have enabled him to perform his essential job functions.</u>

   It is well-established that the ADA does not require employers to excuse disabled employees from having to perform any essential job function. *See, e.g., Schmidt v. Delta Airlines, Inc.*, 2001 WL 649676, at *5 (N.D. Tex. June 8, 2001). Similarly, an employer's legal obligation to provide an accommodation does not include any duty "to eliminate essential job functions, modify job duties, reassign existing employees, or hire new employees." *Toronka v. Cont'l Airlines, Inc*., 411 F. App'x 719, 724 (5th Cir. 2011) (quoting *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)). Here, no reasonable accommodation existed that would have enabled Plaintiff to safely operate a commercial vehicle or perform other essential job functions.

   Nor can Plaintiff identify any accommodation that Schneider could have provided him which did not involve eliminating his essential job functions. (App. 55–65, Plf. Dep. at 146:1–156:6). In fact, Plaintiff believes he was entitled to a light-duty position for "as long as [he was] disabled." (App. 61, Plf. Dep. at 152:9–15). However, it is axiomatic that the ADA does not require employers to create a new position or provide a light duty position for disabled employees, and certainly not for an indefinite period of time. *See, e.g.*, *Wade v. Brennan*, 647 Fed. Appx. 412, 416 (5th Cir. 2016) ("[R]eassignment to light-duty work . . . would necessarily require [the employer] to create a new position for her, which is not a reasonable accommodation."). Unable to identify any reasonable accommodation that could enable him to perform the essential functions of his job as Dedicated Driver or Yard Jockey Driver, Plaintiff cannot satisfy the second element of his *prima facie* case and his ADA discrimination claim should be dismissed. *See Steele v. FFE Transp. Services, Inc.*, 2010 WL 2465231, at *2 (E.D. Tex. June 16, 2010) (granting summary judgment because plaintiff was not qualified to work as a commercial driver due to his medical

condition which prevented him from obtaining medical clearance to drive commercial vehicles).

> c. Plaintiff cannot establish that Schneider terminated his employment "on account of" his disability.

In order to establish the third *prima face* element that Schneider terminated his employment "on account of" his disability, Plaintiff must present some evidence that his "discharge was based on any ***discriminatory animus*** against him" as an individual with a disability. *See Moore v. Centralized Mgmt. Services, L.L.C.*, 843 Fed. Appx. 575, 579 (5th Cir. 2021).

Plaintiff has no such evidence. In fact, Plaintiff admits Schneider provided him with several accommodations including a restricted duty position and medical leave for at least six months. (App. 29–32, 36–42 Plf. Dep. at 68:9–71:14, 85:16–88:4, 92:8–93:11, 94:11–18; App. 85, 92–94, Folkman Decl., ¶ 7, Exh. 3-C). Plaintiff also admits Schneider did not terminate his employment until he informed Schneider—more than nine months after first suffering his eye injury—that he was still unable to safely operate a commercial vehicle due to his vision loss. (App. 43–49, 51–52, 63–65, Plf. Dep. at 102:11–103:6, 108:2–6, 114:21–115:9, 116:1–117:1, 128:25–129:5, 154:12–156:6). These undisputed facts establish beyond dispute that Schneider held no "discriminatory animus" against Plaintiff "on account of" his eye impairment. Thus, Plaintiff cannot establish the third element of his *prima facie* case and Schneider is entitled to summary judgment. *See Moore*, 843 Fed. Appx. at 579 (affirming summary judgment for employer on ADA discrimination claim because plaintiff "failed to present any evidence that [the employer] terminated him *because of* his alcoholism" and because "the record is devoid of any evidence that [plaintiff's] discharge was based on any discriminatory animus against him") (italics in original) (internal quotation marks omitted).

> **2. Plaintiff cannot prove Schneider's stated reason for his termination was pretextual.**

Plaintiff admits that Schneider has set forth a legitimate, nondiscriminatory reason for

terminating Plaintiff's employment, namely because Plaintiff informed Schneider that he could not safely operate a commercial vehicle due to his vision loss.  (App. 43–49, 51–52, 63–65, Plf. Dep. at 102:11–103:6, 108:2–6, 114:21–115:9, 116:1–117:1, 128:25–129:5, 154:12–156:6); *see Mason v. Durham Transp. Inc.*, 265 F.3d 1059 (5th Cir. 2001) (affirming summary judgment against bus driver on ADA discrimination claim because plaintiff "could not obtain a valid commercial driver's license because of his visual impairment at the time he was terminated").

Therefore, to defeat summary judgment, Plaintiff must show that Schneider's decision to terminate his employment was a pretext for unlawful discrimination.  Establishing pretext requires Plaintiff to "not only produce evidence that [the defendant's] reason was false, but also to produce evidence 'that discrimination was the real reason'" for his termination.  *Kopszywa*, 620 Fed. Appx. at 279.  Importantly, Plaintiff cannot establish pretext by mere subjective beliefs that discrimination motivated Schneider's actions.  *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).  Rather, a "plaintiff must prove that [the protected characteristic] 'actually played a role in' and 'had a determinative influence on' the employer's decision-making process."  *Id*.

The undisputed facts establish that Schneider gave Plaintiff more than nine months to recover from his eye injury and only terminated the employment relationship after it became clear Plaintiff could no longer perform the essential functions of his position due to his allegedly permanent vision loss.  (App. 43–49, 51–52, 63–65, Plf. Dep. at 102:11–103:6, 108:2–6, 114:21–115:9, 116:1–117:1, 128:25–129:5, 154:12–156:6).  Plaintiff also cannot dispute that in October 2015, Schneider received two different Work Status Reports from Plaintiff's physicians indicating that Plaintiff was, in fact, able to return to work without restrictions effective immediately.  (App. 86, 95–102, Folkman Decl., ¶¶ 9–10, Exhs. 3-D, 3-E).  It is therefore undisputed that Schneider was justified in requiring Plaintiff to return to work as a Dedicated Driver, and Plaintiff's admitted

12

inability (or refusal) to safely operate a commercial vehicle proves that discrimination did not play a role in Schneider's decision to terminate Plaintiff's employment. *See Mason*, 265 F.3d at 1059 ("[Plaintiff] could not obtain a valid commercial driver's license because of his visual impairment at the time he was terminated. . . . .We need not and do not address any other aspect of this discrimination case."). Plaintiff's admissions that Schneider offered him a restricted duty position and also allowed Plaintiff to stay home on approved medical leave from May 2015 through mid-October 2015 to recover from his eye injury further prove that Schneider held no animus against Plaintiff because of his disability. (App. 29–32, 36–42, Plf. Dep. at 68:9–71:14, 85:16–88:4, 92:8–93:11, 94:11–18); *see Melendez v. County of Westchester*, 17-CV-9637 (NSR), 2019 WL 251731, at *8 (S.D.N.Y. Jan. 16, 2019) (holding that plaintiff "fails to . . . raise any facts that show that Defendants had any animus for individuals with disabilities" especially since "Defendants immediately granted her request for an accommodation").

Unable to establish that Schneider's legitimate, non-discriminatory explanation was merely a pretext for unlawful discrimination, Plaintiff's disability discrimination claim fails as a matter of law and this Court should grant summary judgment in favor of Schneider.

### C.   Plaintiff's Failure-to-Accommodate Claim under the ADA Fails as a Matter of Law.

"A prima facie claim for failure to accommodate requires that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x. 764, 766–67 (5th Cir. 2019). "[I]f the Court finds [Plaintiff] is not a qualified individual, no further inquiry is necessary" and Plaintiff's failure-to-accommodate claims fails as a matter of law. *Weber v. BNSF Ry. Co.*, 2019 WL 9100375, at *3 (N.D. Tex. Dec. 6, 2019), *aff'd,* 989 F.3d 320 (5th Cir. 2021).

13

### 1. Plaintiff cannot establish that he was a "qualified individual" with a disability.

As explained in Section IV.B.1, *supra*, it is undisputed that Plaintiff was not a qualified individual with a disability, and that Plaintiff cannot identify any reasonable accommodation that could have enabled him to perform his essential job duties as a truck driver. As such, Plaintiff cannot establish the first element of the *prima facie* case for his failure-to-accommodate claim. *See Clark*, 775 F. App'x. at 766–67; *Steele*, 2010 WL 2465231, at *2.

### 2. There is no dispute that Schneider provided Plaintiff with several reasonable accommodations.

Plaintiff also admits that Schneider did provide him with several reasonable accommodations after he suffered his injury. Initially, Schneider offered Plaintiff a temporary restricted duty position which eliminated several of Plaintiff's essential job functions (including operating a commercial vehicle) in order to comply with the restrictions imposed by Plaintiff's physicians. (App. 29–32, Plf. Dep. at 68:9–71:14; App. 85, 92–94, Folkman Decl., ¶ 7, Exh. 3-C). However, Plaintiff refused to perform light-duty tasks such as "keeping logs" and maintaining other paperwork as well as going "outside in[to] the light," claiming that his vision loss and photophobia prevented him from performing these basic duties, even though none of Plaintiff's medical certifications restricted him from these activities. (App. 33–35, Plf. Dep. at 72:4–74:10; App. 85, Folkman Decl., ¶ 8; App. 70, English Decl., ¶ 8).

Despite Plaintiff failing to provide any medical certification to justify his refusal to perform the light-duty tasks that Schneider assigned him, Plaintiff concedes that Schneider nonetheless accommodated Plaintiff by allowing him to take medical leave for almost a six-month period from May 2015 through mid-October 2015 to allow him time to recover from his eye injury. (App. 36–42, Plf. Dep. at 85:16–88:4, 92:8–93:11, 94:11–18); *see, e.g., Austgen v. Allied Barton Sec. Services, L.L.C.*, 815 Fed. Appx. 772, 776 (5th Cir. 2020) (holding that granting "unpaid leave" constituted a

reasonable accommodation under the ADA where it "was a temporary measure to accommodate [plaintiff's] self-reported injury until [the employer] could determine–with the advice of [plaintiff's] doctor–a more permanent" decision); *Reed v. Jefferson Par. Sch. Bd.*, 2014 WL 1978990, at *3 (E.D. La. Apr. 24, 2014) ("Under the ADA, a reasonable accommodation may include 'providing additional unpaid leave for necessary treatment.'") (quoting 29 C.F.R. § 1630 .2(o), App).

To the extent Plaintiff contends that Schneider had an obligation to provide him with a permanent light duty position or an indefinite amount of leave, such requests are unreasonable as a matter of law.  *See Wade*, 647 Fed. Appx. at 416 ("[R]eassignment to light-duty work . . . would necessarily require [the employer] to create a new position for her, which is not a reasonable accommodation.");[ *Amsel v. Texas Water Dev. Bd.*, 464 Fed. Appx. 395, 400 (5th Cir. 2012) (granting summary judgment on plaintiff's failure-to-accommodate claim because the plaintiff "was not able to come to work and had not been in the office for months at the time of his discharge" and noting that "[i]ndefinite leave is not a reasonable accommodation" under the ADA).

Accordingly, there is no dispute that Plaintiff cannot establish a *prima facie* case and this Court should therefore grant summary judgment in favor of Schneider on Plaintiff's ADA failure-to-accommodate claim.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment and dismiss all of Plaintiff's claims with prejudice.

15

Date:   June 15, 2021

Respectfully submitted,

McGuireWoods LLP

By: */s/ Chen G. Ni*

Olga A. Bograd
State Bar No. 24075613
obograd@mcguirewoods.com
2000 McKinney Avenue, Suite 1400
Dallas, Texas  75201
Telephone: 214.932.6400
Facsimile: 214.273.6499

Peter A. Milianti (*pro hac forthcoming*)
pmilianti@mcguirewoods.com
Chen G. Ni (*pro hac vice*)
cni@mcguirewoods.com
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601
Telephone: 312.849.8100
Facsimile: 312.849.3690

**ATTORNEYS FOR DEFENDANT
SCHNEIDER NATIONAL CARRIERS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2021, the foregoing document was filed with the Court's

CM/ECF system which will effectuate service in accordance with the provisions of Rule 5 of the

Federal Rules of Civil Procedure upon the following:

Brenda J. Williams
Bank of America, Oak Cliff Tower
400 South Zang Blvd., Suite 1200
Dallas, Texas 75208

*Attorney for Plaintiff*

/s/Chen G. Ni
Chen G. Ni

17